**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

Orlando Nieves,                                                  :
                                                                 :
       Plaintiff,                :
                                                                 :    Civil Action No.  06-5206 (DRD)
v.                                                               :
                                                                 :    **OPINION**
Alfaro Ortiz, et al.                                             :
                                                                 :
       Defendants.               :
_____ :

Appearances by:

Thomas Hoxie, Esq.
Hoxie & Tso LLP
374 Millburn Avenue
Suite 300E
Millburn, New Jersey 07041

     Attorney for Plaintiff, Orlando Nieves

Stuart Rabner, Esq.
Attorney General of New Jersey
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, New Jersey 08625-0112
By: Sarah B. Campbell, Esq.
Deputy Attorney General

     Attorney for Defendants, Alfaro Ortiz, Beverly Broadus-Smith, Gwendolyn Nolley,
     Robert Sorrell, John Ferriola, Myron Popowych, Christopher House, and Terrence Smith.

**DEBEVOISE, U.S.S.D.J.**

     Plaintiff, Orlando Nieves ("Nieves"), filed a second amended complaint alleging, _inter_

_alia_, that Defendants, individually and in their official capacities as administrators within the

prison system of the State of New Jersey, conspired against him and maliciously prosecuted him for possession of drugs in violation of his civil and due process rights under the Constitution and laws of the United States, the Constitution and laws of the State of New Jersey and the common law.  He seeks compensatory damages, declaratory and injunctive relief, and costs and fees.

Defendants, Alfaro Ortiz, Beverly Broadus-Smith, Gwendolyn Nolley, Robert Sorrell, John Ferriola, Myron Popowych, Christopher House, and Terrence Smith (individually referred to by last name and collectively referred to as "Defendants"),[1] in lieu of answering Nieves's second amended complaint, move, pursuant to Fed. R. Civ. P. 12(b)(6), for dismissal for failure to state a claim upon which relief may be granted, or, in the alternative, for summary judgment.

Defendants' motion to dismiss will be converted to a motion for summary judgment, and, for the reasons cited below, stayed in part, granted in part and denied in part.

## BACKGROUND

Between November, 2004 and January, 2005, Nieves was an inmate at East Jersey State Prison ("EJSP").  On November 6, 2004, after receiving visitors in the Visit Hall, Nieves and approximately ten other inmates, were required to strip in a frisk room and were subjected to a body cavity search.  Nieves believes that Ferriola was the officer who stripped searched him.

Although Ferriola reported that he "was not the officer performing the routine strip search on I/M Nieves . . .  on November 6, 2004 at approx. [sic] 11:15 A.M.," he described the search

---

[1]Ortiz is the Administrator of East Jersey State Prison ("EJSP"); Broadus-Smith is the Assistant Superintendent of EJSP; Nolley is a Hearing Officer for the NJ Department of Corrections; Sorrell is a Corrections Officer at EJSP; Ferriola is a Corrections Officer at EJSP; Popowych is a Corrections Officer Sergeant at EJSP; House is a Corrections Sergeant at EJSP; Smith is a Senior Investigator in the Special Investigations Unit for the NJ Department of Corrections.

procedure as requiring the nude inmate to stand before a corrections officer who asks the inmate questions about dentures.  The corrections officer then spreads the inmate's cheeks, raises the inmate's arms, and lifts up the inmate's genitals.  The inmate is then required to bend over, and the corrections officer spreads the inmate's buttocks.  If the inmate is overweight, the corrections officer will also separate the folds of skin.  If the inmate has hair, the corrections officer will shake the inmate's hair and have the inmate bend over and shake his head.  The corrections officer will then go through the inmate's clothes and shake them, too.  If no contraband is found, the inmate is permitted to dress and leave the frisk room.

The officer who conducted the search of Nieves found nothing on his person or in his clothing, and Nieves was permitted to dress.  As Nieves was tying his shoes, however, Sorrell, who was standing on the opposite side of the room directly behind Nieves, claims that he "observed I/M Nieves . . . drop a bag of pill [sic] on the floor."  The bag measured two and one-half inches by two and one-half inches and contained 29-pills.  The pills were later identified as a prescription heart medication, but it had not been prescribed for Nieves by the prison medical staff.  Sorrell called Popowych over to view the bag.  Nieves was not questioned about the bag, nor were any of the other inmates or corrections officers present in the frisk room.  Neither was Nieves subjected to urine testing or other form of drug screening.

Nieves was handcuffed, however, placed in pre-hearing detention, and served with a chain-of-custody certification and a disciplinary report by Sorrell who charged him with "possession or introduction of any prohibited substances such as drugs, intoxicating or related paraphernalia not prescribed for the individual by medical or dental staff."  The investigation report signed by House specified that there were no witnesses and no other facts concerning the

charge.  House's only comment and conclusion was that "[b]ased upon staff report and evidence the charge has merit."  Nieves's case was referred to adjudication, and he was assigned a Counsel Substitute who was a "H.S. Grad."

Nolley served as the disciplinary hearing officer.  At a hearing conducted on November 8, 2004, Nieves pleaded not guilty to the charges, but the hearing was postponed after Nieves requested a polygraph test and confrontation with Sorrell, Ferriola, and the corrections officer who strip searched him.  The hearing was re-convened on November 10 at which time Nieves confronted Sorrell.  Nolley recorded the questions posed by Nieves to Sorrell and his answers. The hearing was continued on November 15 with Nieves's confrontation with Ferriola.  Again, Nolley recorded the questions posed by Nieves to Ferriola and his answers.  However, Nolley refused Nieves's request for the polygraph test and confrontation with the corrections officer who searched him.  Upon conclusion of the hearing, Nolley's findings were that

> [i]nmate Nieves pleaded not guilty to having possession of any prohibited substances.  He stated the pills were not his and he did not have any pills.  He requested confrontation with C/O Sorrell and C/O Ferriola.  The confrontation did not prove that the medication belonged to someone else.  It did not prove beyond any doubt that the pills could have been brought in by someone else.  C/O Ferriola stated he was not the C/O who initially searched inmate Nieves.  The pills found are prescribed medication but not prescribed for the inmate, therefore, he had no good reason to have them.  Based upon every reasonable attempt to offer the inmate all of his requests and research information requested by the inmate, this charge is upheld.  Inmate could not prove that the pills found were not in his possession or on his person.  Charge upheld.

Nolley sanctioned Nieves with ten days of detention, 120 days of loss of commutation time, 90 days in administrative segregation, 365 days of urine monitoring, and permanent loss of contact visits pursuant to the Zero Tolerance Drug/Alcohol Policy.[2]

_____

[2]See N.J.A.C. 10A:4-5.1(c)(1); N.J.A.C. 10A:1.2.2.

On November 16, 2004, Nieves appealed Nolley's adjudication to Ortiz, citing violation of standards, misinterpretation of facts, and violation of due process and asking for leniency. Because he was scheduled to be released on parole to M.A.P.[3] on November 16, 2004, Nieves asked Ortiz to rescind and expunge Nolley's decision, or, in the alternative, to conduct a new investigation with recision of the zero tolerance sanction.

Nieves argued that the evidence did not support the charge, and Nolley incorrectly placed the burden of proof on him to establish that he was not in possession of the bag of pills, rather than on Sorrell to establish that Nieves was in possession of the bag of pills. Nieves asserted that, because credibility of the parties was at issue, Nolley erred by failing to explain why she credited Sorrell's statements over his and in refusing him the polygraph test. He also asserted that Nolley erred in imposing the zero tolerance policy because he was not found in possession of drugs, intoxicants, or narcotic paraphernalia. Further, Nieves claimed that the charges against him were not thoroughly investigated because the corrections officer who strip searched him was not questioned.

Responding for Ortiz, Broadus-Smith upheld Nolley's decision and sanctions against Nieves, finding simply that "[t]here was compliance with DOC standards on inmate disciplinary [sic] which prescribes procedural safeguards."

On December 27, 2004, Nieves appealed Broadus-Smith's decision to the Appellate Division of the New Jersey Superior Court (the "Appellate Decision"). On April 27, 2005, he moved for assignment of counsel, remand, and stay of sanctions pending appeal. The Appellate Division remanded Nieves's case to the Department of Corrections, ruling that "[a]s appellant

---

[3]Mutual Assistance Program which may have lead to full parole for Nieves.

was not permitted to cross-examine witnesses against him, the DOC shall render findings of fact

and a statement of reasons to support its conclusion if the polygraph test is not given.  The

remand shall be completed on or before June 24, 2005."

> On June 15, 2005, Ortiz responded that
>
> Corrections Officers Sorrel and Ferriola were made available at your request for confrontation and cross examination at your hearing . . . .  This confrontation and cross-examination did not persuade the Hearing Officer that the medication did not belong to you, as you alleged.
>
> Further, it is the Disciplinary Hearing Officer's function to assess both the demeanor of those involved and the content of their testimony in determining credibility.  I note that there is no new evidence being presented that would necessitate a credibility review beyond what occurred at the hearing.
>
> In closing, after reviewing your polygraph request, I fail to see how a polygraph would add to what is in the record.  Therefore, . . . your request . . . is denied.

Nieves appealed again to the Appellate Division.  This time, the Appellate Division

rejected the Department's argument that it "presented substantial credible evidence that Nieves

possessed the medication and thereafter shifted the burden to Nieves to rebut the charge," and

found that the hearing officer erroneously placed the burden of proof on Nieves rather than the

Department.  Nieves v. N.J. Dep't. of Corrections, 2006 WL 1194915, *3-4 (N.J.Super.A.D. May

5, 2006).  Reversing Ortiz's final determination, the Appellate Division found that "there are

'serious issues of credibility,'" and ordered a new hearing officer to conduct a new hearing at

which Nieves was be allowed to cross examine the witnesses "necessary for an adequate

presentation of the evidence" and to present additional witnesses and evidence, including a

polygraph examination.  Id. citing N.J.A.C. 10A:4-9.14(a).  The new hearing officer was directed

to make a thorough and complete record with a full explanation of factual findings of credibility.

On June 29, 2006 at Bayside State Prison ("BSP"), Nieves was administered a polygraph test by a Special Investigations Division Senior Investigator, who determined that Nieves answers were "deceptive."  Nieves, however, was denied access to the polygraph results according to the handwritten notes of the new hearing officer.

The new hearing officer found Nieves not guilty because, "in clear violation of . . . procedure," contraband seizure forms were not attached to the bag of pills as required, making the evidence unreliable for disciplinary adjudication purposes.  The new hearing officer made no other findings.

On October 31, 2006, Nieves, as a *pro se* plaintiff, filed a civil rights complaint asserting that the Defendants conspired to prosecute him, and did falsely and maliciously prosecute him, in retaliation for his exercise of his First Amendment right.  He amended his complaint on December 4, 2006.  On January 4, 2007, this Court granted Nieves's application for *pro bono* counsel, and Nieves was permitted to file a second amended complaint.

In lieu of answering, Defendants now move to dismiss Nieves's amended complaint for failure to state a claim, or, in the alternative, for summary judgment.

## DISCUSSION

**A. Standard of Review**

**Dismissal pursuant to Fed. R. Civ. P. 12(b)(6):**  The Court may grant a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief. Oatway v. Am. Int'l Group, Inc., 325 F.3d 184, 187 (3d Cir. 2003) (citation omitted).  However, a court need not credit a plaintiff's "bald assertions"

or "legal conclusions." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir.1997).

The court's focus of in a Rule12(b)(6) analysis is not whether a plaintiff will ultimately prevail

but whether he or she is entitled to offer evidence to support the claims. Oatway, 325 F.3d at

187. Where a party moves to dismiss under Rule 12(b)(6), or in the alternative, for summary

judgment under Rule 56, and attaches material outside the pleadings to its motion papers, a court

"has the discretion to accept the extraneous material and convert the motion into one for

summary judgment." Gunson v. James, 364 F. Supp.2d 455, 460-61 (D.N.J. 2005); see also Fed.

R. Civ. P. 12(b). A court, however, may consider documents that are "integral to or explicitly

relied upon in the complaint" without converting a motion to dismiss into a motion for summary

judgment. In re Rockefeller Ctr. Props., Inc. Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999)

(emphasis and citations omitted). Here, the Defendants indeed attach materials outside the

pleadings to their motion papers that will be considered by the Court and, thus, will require

conversion of the motion to dismiss to motion for summary judgment.

**Summary Judgment:** Summary judgment is appropriate where the Court is satisfied that "there

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. (56)(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A

fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Disputes over irrelevant or

unnecessary facts will not preclude a grant of summary judgment. Id. The burden of establishing

that no "genuine issue" exists is on the party moving for summary judgment. Celotex, 477 U.S.

at 330. Once the moving party satisfies this initial burden, the non-moving party "must set forth

specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the

non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324. In other words, the non-moving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Ridgewood Bd. of Ed. v. Stokley, 172 F.3d 238, 252 (3d Cir. 1999). A genuine issue of material fact is one that will permit a reasonable jury to return a verdict for the non-moving party. Anderson, 477 U.S. at 248. In evaluating the evidence, a court must "view the inferences to be drawn from the underlying facts in the light most favorable to the [non-moving] party." Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002) (citations omitted).

## B. Whether Nieves Has Failed to Exhaust Administrative Remedies

First, Defendants argue that Nieves's § 1983 claims in Count One of his complaint are procedurally barred by his failure to exhaust his administrative remedies.

Citing Woodford v. Ngo, 126 S.Ct. 2378, 2387 (2006), Defendants assert that Nieves was required to exhaust the prison administrative remedy procedures before filing his action in federal court, even though he appealed his discipline up to the Appellate Division, use of the grievance procedure is mandatory under the Prison Litigation Reform Act ("PLRA"), even if the relief requested is beyond the ability of the hearing officer to grant.

The PLRA, 42 U.S.C. § 1997e(a), states in relevant part that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." See 42 U.S.C. § 1997e(a). Congress enacted the

9

PLRA in 1996, "largely in response to concerns about the heavy volume of frivolous prison litigation in the federal courts." Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (citations omitted).  Specifically, § 1997e(a) was designed to reduce the quantity, and improve the quality, of prisoner lawsuits and afford corrections officials an opportunity to address complaints internally before initiation of a federal suit.  Jones v. Bock, 127 S.Ct. 910, 914-15 (2007) (citing Woodford, 126 S.Ct. at 2388).  Internal review filters out frivolous claims and facilitates adjudication of those claims that are ultimately brought to federal court by providing an administrative record outlining the controversy.  See Woodford, 126 S.Ct. at 2388.

The PLRA requires an inmate to exhaust all administrative remedies prior to bringing a federal action challenging prison conditions, whether or not such remedies provide the inmate with the relief requested in the federal action.  Nyhuis, 204 F.3d at 71; see also Woodford, 126 S.Ct. at 2388.  Failure to exhaust administrative remedies is an affirmative defense, and the defendant bears the burden of pleading and proof.  See Jones, 127 S.Ct. at 921 ("failure to exhaust is an affirmative defense under the PLRA, and ... inmates are not required to specifically plead or demonstrate exhaustion in their complaints").  See also Ray v. Kortes, 285 F.3d 287, 295 (3d Cir. 2002).  The Third Circuit has held that the exhaustion requirement in the PLRA applies to a grievance procedure set forth in an inmate handbook not formally adopted by a state administrative agency.  Concepcion v. Morton, 306 F.3d 1347, 1348-49 (3d Cir. 2002).

A grievance procedure is available to inmates at EJSP.  It provides three avenues of complaint.  The Inmate Request Form ("IRF") is to be used for "concerns or problems which may be experienced on a day-to-day basis."  The Request for Personal Interview ("RPI") is to be used to "help resolve questions, concerns or problems which cannot be handled through . . . the

10

[IRF]."  The Administrative Remedy is used to bring a formal complaint to the Administration for resolution before applying to the Courts, where problems or complaints "have not been handled either through regular procedures or by using the [IRF] or the [RPI]."

Nieves pursued fully his appeal of the disciplinary actions, but he did not file and exhaust the internal prison grievance process before filing with this Court.  The Court, however, will not grant Defendants' summary judgment because, according to Defendants' counsel, a grievance would be timely if filed within the appropriate statute of limitation.

Nieves's grievance would be timely if commenced without delay.  Thus, to allow Nieves the opportunity to exhaust the prison grievance process, Defendants' motion for summary judgment on Nieves's § federal claims is stayed pending processing of Nieves's grievance through the prison grievance procedure.

**C.  Nieves's Federal Claims (Counts I, II and III)**

**Count I - § 1983 Claims:**  Nieves seeks recovery under the Civil Rights Act of 1871, 42 U.S.C. § 1983, alleging that defendants, under color of state law, deprived him of his rights under the First, Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution and under the laws of the United States by maliciously retaliating against him.  He claims that this malicious retaliation resulted in his loss of liberty, mental anguish, suffering, inconvenience, lost wages, and loss of comfort and consortium of his family.  Ultimately, he alleges, this malicious retaliation resulted in his loss of parole opportunities.

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for violation of his constitutional rights.  In relevant part, § 1983 provides that:

[e]very person who, under color of any statute, ordinance, regulation, custom, or

usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).  The under color of state law requirement of § 1983 excludes "merely private conduct, no matter how discriminatory or wrongful."  American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999).  Liability under § 1983 attaches only to those "who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it."  Nat'l Collegiate Athletic Ass'n v. Tarkanian, 488 U.S. 179, 191 (1988) (citation omitted).

A claim of malicious retaliation is not clearly evident in Nieve's complaint, but there is evidence sufficient to construe Nieve's claims as malicious prosecution and malicious abuse of process, both of which are sustainable actions under § 1983.[4]

The Court of Appeals for the Third Circuit has held that a plaintiff can state a § 1983 claim by alleging that the defendant initiated the malicious prosecution in retaliation for the plaintiff's exercise of First Amendment rights.  See Merkle v. Upper Dublin School Dist., 211

---

[4]Defendants also appear to construe Nieves's claims as malicious prosecution under §1983 because they assert plaintiff's guilt as a bar to recovery.  Guilt is a defense to a § 1983 claim.  See Hector v. Watt, 235 F.3d 154, 156 (3d Cir. 2000).

F.3d 782, 798 (3d Cir. 2000).   To support a § 1983 claim, a plaintiff must show that the

defendant lacked probable cause for his actions.   Pulice v. Enciso, 39 Fed. Appx. 692, 696 (3d

Cir. July 17, 2002).  In a § 1983 claim, "[t]he question of probable cause . . . is one for the jury."

Montgomery v. DeSimone, 159 F.3d 120, 124 (3dCir. 1998).

A plaintiff can also state a malicious abuse of process claim under § 1983.  Godshalk v.

Borough of Bangor, 2004 WL 999546, at *13 (E.D.Pa. May 5, 2004).  Favorable termination of

proceedings is not required for a § 1983 abuse of process claim.  Rose v. Bartle, F.2d 331, 350

(3d Cir. 1989) (citation omitted).  Nor is lack of probable cause.  Jennings v. Shuman, 567 F.2d

1213, 1217 (3d Cir. 1977).  Although a plaintiff must establish a constitutional violation, this

may be done by showing a violation of procedural due process.  Id. at 1219.

It is not in dispute that, here, the Defendants were acting in their official capacities and

under the color of state law.  At a minimum, Nieves asserts that Sorrell, as a corrections officer

employed at EJSP, maliciously and without probable cause, lodged false disciplinary charges

against him allegedly for his exercise of his First Amendment rights.  Nieves contends that these

false charges were allowed to stand because corrections officers and hearing officers refused to,

or failed to, properly investigate them.  Further, Nieves alleges that the hearing officers made

errors during the grievance procedure, and in applying the proper standards under the law.

The result of these failures, according to Nieves, was denial of due process and a finding

of guilt.  Nieves asserts that, wrongly having been found guilty, he suffered losses of liberty,

family comfort and, ultimately, his opportunity for parole.

There is in the record the well-reasoned opinion of the Appellate Division of the New

Jersey Superior Court in Nieves v. New Jersey Department of Corrections, 2006 WL 1193915

(May 5, 2006), reversing the final determination of the Department.   The Appellate Division found that "there [were] serious issues of credibility."  Because "no other officer corroborated Sorrell's assertion" that Nieves was in possession of the bag of pills, Sorrel's statements were in direct conflict with Nieves's assertions.  <u>Nieves</u> at *3.   The Appellate Division also found that the hearing officers made serious errors, both procedurally and in applying the legal standards, during the hearing process.  <u>Nieves</u> at *4.  Considering the gravity of the charges, the Appellate Division remanded the action back to the Department for a new hearing conducted before a new hearing officer.

A new hearing was never conducted, however.  The new hearing officer found a  further defect, a flaw in the chain of custody, which made the evidence unreliable and unusable. Although the new hearing officer entered a determination of "not guilty," Nieves had already suffered a substantial loss of liberty and privileges, as well as his opportunities for parole.

The murky circumstances of this case, particularly the chain-of-custody problem with the evidence, preclude summary judgment at this early stage of the litigation because a reasonable jury could find in favor of Nieves.

**Count II - § 1985 Claims:**  Nieves alleges that Defendants, acting under color of state law, conspired against him to impede, hinder, obstruct, or defeat justice.  In doing so, he alleges they violated his rights under the First, Fifth, Sixth, Eight and Fourteenth Amendments to the Constitution and under the laws of the United States, which, in addition to loss of liberty and other privileges, ultimately resulted in denial of parole opportunities.

To state a claim under § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any

person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.  See Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971).  To establish a prima facie case, a plaintiff must show an express or implied agreement among the defendants to deprive the plaintiff of his constitutional rights and overt acts in furtherance of the conspiracy which actually deprive plaintiff of his rights.  Id.

Here, viewing the inferences to be drawn from the underlying facts in the light most favorable to Nieves, he appears to make merely a bald statement that Defendants have conspired against him for exercising his constitutional rights.  Although Nieves has suffered substantial injury and deprivation as a result of Defendants' actions, he does not show an express or implied agreement among the Defendants to deprive him of his rights.  Further, he does not allege who conspired against him, what they conspired about, or when or where they conspired against him. He does not allege that the conspiracy was motivated by racial or class discrimination.  He does not allege any acts committed in furtherance of the conspiracy.  These facts, however, may emerge through the prison grievance procedure that is yet to be conducted.

Because these facts may emerge through the grievance process, Defendants' motion for summary judgment will be stayed as to Nieves's allegations of violation of 42 U.S.C. § 1985 in Count II pending completion of the grievance process.

**Count III - § 1986 Claims**:  Nieves in Count III alleges that, although each of the Defendants knew about the conspiracy, they refused, or neglected, to stop it when they had a duty to do so in violation of § 1986.  As Nieves correctly notes, § 1986 allows a cause of action against party who had knowledge of § 1985 conspiracy and had power to prevent it, but failed to do so.  Boykin v.

15

Bloomsburg University of Pennsylvania, 893 F. Supp. 409 (M.D. Pa. 1995), *aff'd* 91 F.3d 122 (3d Cir. 1996), *cert. denied*, 519 U.S. 1078 (1997).  However, "no claim can be maintained under section 1986 unless a cause of action has been established under section 1985."  Robison v. Canterbury Village, Inc., 848 F .2d 424, 431 n. 10 (3d Cir. 1988).  If Nieves is able to set forth specific facts showing that there is a genuine issue for trial on his § 1985 claims, he may be able to maintain a claim under § 1986.

Again, because facts may emerge through the processing of Nieves's grievance through the prison procedure which is yet to be conducted, Defendants' motion for summary judgment will be stayed as to Nieves's allegations of violations under 42 U.S.C. § 1986 pending completion of the grievance process.

**Defendants' Affirmative Defenses:**  Defendants raise a number of affirmative defenses to Nieves claims.

**Eleventh Amendment Immunity:**  Defendants argue that Nieves's federal claims must be dismissed because they are entitled to Eleventh Amendment immunity from suit.  Defendants assert that they are all officials of the State who have not consented to suit.  See Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989) (§ 1983 was "not intended to disregard the well established immunity of the State from being sued without its consent").  Because they were acting within their official capacities, Defendants also argue that they are not "persons" within the meaning of 42 U.S.C. § 1983.  Id.

"The Eleventh Amendment grants a State immunity from suit in federal court by citizens of other States, and by its own citizens as well."  Lapides v. Bd. of Regents, 535 U.S. 613, 616 (2002); see also Will at 491 U.S. 71 (neither a State nor its officials acting in their official

16

capacities are "persons" under § 1983"). Claims against state officers, acting in their official

capacity, are treated as suits against the state itself.  See Kentucky v. Graham, 473 U.S. 159, 166

(1986) ("As long as the government entity receives notice and an opportunity to respond, an

official-capacity suit is . . . to be treated as a suit against the entity"); Brandon v. Holt, 469 U.S.

464, 471-72 (1985) ("a judgment against a public servant 'in his official capacity' imposes

liability on the entity that he represents").  Thus, claims asserted against an arm of the state, or

against an official acting in his or her state capacity, must be dismissed, unless certain limited

exceptions apply.

Nieves does not dispute that the Eleventh Amendment bars suits which are brought

against states or state officials wherein imposition of liability would be paid from public funds,

Hindes v. FDIC, 137 F.3d 148, 165 (3d Cir. 1998).   Nieves asserts, however, that the State has

waived its immunity and has consented to suit.  See Welch v. Texas Dept. of Highways and

Public Transp., 483 U.S. 468 (1987) (holding that an exception to Eleventh Amendment

immunity is where a state waives its immunity and consents to suit in federal court).  According

to Nieves, the April 12, 2007 Declaration of Sarah Campbell  makes clear that the State has

voluntarily waived its immunity by consenting to take part in this case.

In part, the Campbell declaration states that:

Representation of State employees by the Office of the Attorney General of New
Jersey is not automatic.  See N.J.S.A. 59:10A-2, et seq.  In particular, a State
employee is not entitled to Attorney General representation on matters outside the
scope of his or her employment, or an act of failure to act was because of actual
fraud, willful misconduct or actual malice.  See N.J.S.A. 59:10A-2.

The Campbell declaration cannot be read as broadly as Nieves urges.  Campbell's

statement was offered as justification for requesting a 30-day extension of time which was

17

needed to investigate whether Defendants acted within their jobs descriptions and thus qualified for State representation in the instant matter.  Following the investigation, the State chose to represent Defendants.  It logically appears, then, that the State determined that Defendants were acting within their official capacities.  Because Defendants were acting in their official capacities, they are immune from imposition of liability based on the Eleventh Amendment.

However, Nieves also names Defendants as individual defendants.  "The Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal liability' on state officials under § 1983."  Hafer v. Melo, 502 U.S. 21, 31 (1991).

Because suit is not barred against Defendants for individual and personal liability under § 1983, Defendants' motion will be denied to the extent that it seeks dismissal of personal and individual liability.

Nieves also seeks declaratory and prospective injunctive relief in addition to damages. The Supreme Court has held that state officials are not immune under the Eleventh Amendment from prospective injunctive relief. See Ex Parte Young, 209 U.S. 123 (1908) (holding that to ensure the enforcement of federal law, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law).  The standard allows courts to order prospective relief.  See Edelman v. Jordan, 415 U.S. 651, 94 (1974); Milliken v. Bradley, 433 U.S. 267 (1977).  It also allows measures ancillary to appropriate prospective relief. Green v. Mansour, 474 U.S. 64, 71-73 (1985).  But federal courts may not award retrospective relief for money damages or its equivalent, if the State invokes its immunity.  Edelman, 415 U.S. at 668.

Because Nieves seeks declaratory and injunctive relief under § 1983 to prevent future acts

18

of malicious prosecution and abuse of discretion, Defendants' motion based on Eleventh Amendment immunity will be denied to the extent that it seeks dismissal of the declaratory or injunctive relief sought by Nieves.

**Qualified Immunity:**  Defendants also raise the defense that Defendants are entitled to qualified immunity.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Under the qualified immunity analysis, the court should first assess whether, "the officer's conduct violated a constitutional right." Saucier v. Katz, 533 U.S. 194, 201 (2001); see also Mellott v. Heemer, 161 F.3d 117, 121 (3d Cir. 1998) ("In addressing the qualified immunity question, we first ask whether the plaintiffs have 'asserted a violation of a constitutional right at all.' ") (quoting Siegert v. Gilley, 500 U.S. 226, 232 (1991)).

If so, the court must decide "whether the right was clearly established," and in particular, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation." Id. at 201-02.  "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . .; but, it is to say that in the light of pre-existing law the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

"Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." Saucier, 533 U.S. at 200.  "[T]o deny summary judgment any time a material issue

of fact remains on [a] . . . claim could undermine the goal of qualified immunity to 'avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." Id. at 202 (quoting Harlow, 457 U.S. at 818).  However, "[j]ust as the granting of summary judgment is inappropriate when a genuine issue exists as to any material fact, a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis." Curley v. Klem, 298 F.3d 271, 278 (3d Cir. 2002).

Because there are "unresolved disputes of historical fact relevant to the immunity analysis," Defendants' motion for summary judgment will be denied.

**Guilty of the Offense:**  Defendants also submit the affirmative defense that Nieves was guilty of the charged offense and was adjudicated as not guilty only because of a technical glitch with the evidence.  Although being guilty of an offense can bar recovery, Defendants have the burden of proof on this issue.  Hector v. Watt, 235 F.3d 154, 156 (3d Cir. 2000).

In spite of Defendants' assertions to the contrary, Nieves's guilt has not been established. Whether or not he was in possession of the pills is precisely the issue at the heart of the matter.  It is a question of fact for the jury and, based on the facts presented at this early stage of the litigation, a reasonable jury could find that Nieves was not in possession of the pills and that charges were falsely lodged against him.  Thus, Defendants' motion will be denied.

**No Evidence of Callous Indifference or Evil Motive**: Defendants argue that Nieves's claim for punitive damages must be dismissed as a matter of law because there is no evidence that Defendants acted with evil motive or callous indifference to a federally protected right.

"The purpose of punitive damages is to punish the defendant for his willful or malicious

20

conduct and to deter others from similar behavior." Memphis Community School Dist. v.

Stachura, 477 U.S. 299, 306 n. 9 (1986). "A jury may be permitted to assess punitive damages in

an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or

intent, or when it involves reckless or callous indifference to the federally protected rights of

others." Smith v. Wade, 461 U.S. 30, 56 (1983). "While the Smith Court determined that it was

unnecessary to show actual malice to qualify for a punitive award . . ., its intent standard, at a

minimum, required recklessness in its subjective form." The Court referred to a 'subjective

consciousness' of a risk of injury or illegality and a ' "criminal indifference to civil obligations.'"

Kolstad v. American Dental Ass'n, 527 U.S. 526, 536 (1999). For a plaintiff in a § 1983 case to

qualify for a punitive award, "the defendant's conduct must be, at a minimum, reckless or callous.

Punitive damages might also be allowed if the conduct is intentional or motivated by evil motive,

but the defendant's action need not necessarily meet this higher standard." Savarese v. Agriss,

883 F.2d 1194, 1204 (3d Cir. 1989).

Because a reasonable jury could find in Nieves's favor on his claims of malicious

prosecution and abuse of discretion on the facts set forth at this early stage of the proceeding,

Defendants' motion for summary judgment will be denied.

**D.  Nieves's State Law Claims**

Defendants seek dismissal of Nieves's State law claims on the ground that he has failed

to comply with the notice requirements of the New Jersey Tort Claims Act ("NJTCA"). In

support of their motion, the Defendants submit the affidavit of Theresa Adams, Supervisor of

Claims for the State of New Jersey, Department of Treasury, who states that she conducted a

thorough check of the records and has confirmed that neither Nieves, nor anyone acting on his

behalf, filed a notice of tort claim "with respect to allegations of retaliation by corrections

officers or Department of Corrections staff at East Jersey State Prison from November 6, 2004 to

[May 8, 2007]" or "with respect to allegations of a false disciplinary charge issued at East Jersey

State Prison on November 6, 2004."

Nieves asserts that there is an exception to the 90-day rule which may still permit him to

file a NJTCA notice to prevent dismissal of his state claims.

The NJTCA states that "[n]o action shall be brought against a public entity or public

employee under [the NJTCA] unless the claim upon which it is based shall have been presented

in accordance with the procedure set forth in this Chapter."  N.J.S.A. § 59:8-3.  This notice must

be signed and filed with the public entity within 90 days of the accrual of the cause of action.  Id.

at § 59:8-8.   The NJTCA, § 59:8-9, however, allows for a limited exception to the 90-day filing

rule where

> [a] claimant who fails to file notice of his claim within 90 days . . . may, in the
> discretion of a judge of the Superior Court, be permitted to file such notice at any
> time within one year after the accrual of his claim provided that the public entity
> or the public employee has not been substantially prejudiced thereby. Application
> to the court for permission to file a late notice of claim shall be made upon motion
> supported by affidavits based upon personal knowledge of the affiant showing
> sufficient reasons constituting extraordinary circumstances for his failure to file
> notice of claim within the period of time prescribed by section 59:8-8 of this act
> or to file a motion seeking leave to file a late notice of claim within a reasonable
> time thereafter; provided that in no event may any suit against a public entity or a
> public employee arising under this act be filed later than two years from the time
> of the accrual of the claim.

Because Nieves's claims are against public employees of the State of New Jersey, he was

required to file a Notice of Claim with each party within 90 days of the accrual of his claim.  The

accrual date under the NJTCA is the date on which the alleged tort is committed.  See, e.g.,

Beauchamp v. Amedio, 164 N.J. 111, 117 (2000).  The NJTCA, however, grants New Jersey Superior Courts limited discretion in allowing late notice.  If a motion to file late notice, based on "sufficient reasons constituting extraordinary circumstances," is made within a year of the accrual date, a court may allow the notice to be served.  N.J.S.A. 59:8-9.

Whether or not there is sufficient reason to grant Nieves the additional nine-month extension to file his NJTCA notice is not within the jurisdiction of this Court.  Decision on the issue here, however, will be stayed to allow Nieves a reasonable opportunity to present his arguments before the State court.

### CONCLUSION

For the reasons set forth above, Defendants' motion for dismissal will be converted to a motion for summary judgment.  Defendants' motion for summary judgment will be denied on Plaintiff's failure to exhaust the prison grievance procedure in accordance with the Prison Litigation Reform Act, 42 U.S.C. § 1997 to permit Plaintiff to process his grievance through the prison procedure.  Defendants' motion for summary judgment will be denied on Nieves's claims of violation of 42 U.S.C. § 1983 and will be stayed on Nieves's claims of violations of 42 U.S.C. §§ 1985 and 1986 pending the processing of Nieve's grievance through the prison procedure. Defendants' motion for summary judgment will be stayed pending a decision by the New Jersey Superior Court concerning Nieves's request for an extension time for filing under the New Jersey Tort Claims Act.  Defendants' motion for summary judgment on immunity under the Eleventh Amendment will be granted as to liability of the Defendants' actions while acting within their official capacities, but will be denied as to the individual and personal liability of each Defendant, and will be denied as to prospective injunctive and declaratory relief.  Lastly,

Defendants' motion for summary judgment will be denied as to Defendants' qualified immunity,

Defendants' lack of callous indifference or evil motive, and Nieves's guilt.

  An appropriate order follows.


       /s/ Dickinson R. Debevoise_____
       Dickinson R. Debevoise, U.S.S.D.J.


Dated: June 18th, 2007