**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

ORLANDO NIEVES,

                        Plaintiff,

v.

ALFARO ORTIZ, et al.,

                        Defendants.

Civ. No. 06-5206 (DRD)

**O P I N I O N**

*Appearances by:*

HOXIE & ASSOCIATES LLC
75 Main Street, Suite 301
Millburn, NJ 07401
by:  Thomas Hoxie, Esq.

       *Attorney for Plaintiff*

ANNE MILGRAM
ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
P.O. Box 112
Trenton, NJ  08625
by:  Thomas E. Kemble, Esq.
    Deputy Attorney General

       *Attorney for Defendant*s

**DEBEVOISE, Senior District Judge**

      In this prisoner's rights action, Plaintiff, Orlando Nieves, a former inmate of the East

Jersey State Prison ("EJSP"), alleges that certain EJSP guards and administrators deprived him of his state and federally protected rights when they falsely charged him with possession of contraband following a strip search on November 6, 2004.  Defendants in this action are: Alfaro Ortiz, the former administrator of the EJSP; Beverly Broadus-Smith, the former assistant superintendent of the EJSP; Gwendolyn Nolley, a hearing officer for the Department of Corrections; Robert Sorrell, a senior corrections officer at the EJSP; John Ferriola, another senior corrections officer at the EJSP; Myron Popowych, a sergeant at the EJSP; Christopher House, a corrections officer at the EJSP; and Terence Smith, an investigator with the Department of Corrections' Special Investigations Division (collectively "Defendants").

Now before the Court are (1) Nieves's motion for an order declaring that § 10A:4-9.15 of the New Jersey Administrative Code, which requires that a finding of guilt at a prison disciplinary proceeding be based on substantial evidence, is unconstitutional on its face and as applied in this situation; and (2) Defendants' cross-motion, which seeks summary judgment on Nieves's 42 U.S.C. §§ 1983, 1985, and 1986 claims as well as on his state law claim under the New Jersey Civil Rights Act.  For the reasons set forth below, Nieves's motion will be denied and Defendants' motion will be granted in part and denied in part.

## I.  BACKGROUND

On November 6, 2004, while Nieves was an inmate at EJSP, he was strip searched by EJSP guards.  Nieves, who was returning from a contact visit in the Visit Hall, was brought into a search room, with approximately ten other inmates and instructed to remove all of his clothes. A corrections officer, believed by Nieves to be Defendant Senior Corrections Officer ("SCO") Ferriola, inspected Nieves's body cavities and shook his clothing, looking for contraband.

The corrections officer who conducted the search found nothing on Nieves's person or in his clothing.  Having found no contraband, the corrections officer permitted Nieves to dress.  As Nieves was tying his shoe, Defendant SCO Sorrell, who was standing on the opposite side of the room, claims to have observed a bag of pills fall to the floor near Nieves.  The small plastic bag was later found to contain 29 prescription heart pills.  Records showed that the heart medication had not been prescribed to Nieves by the EJSP's medical staff.

SCO Sorrell called Defendant Sergeant Popowych over to inspect the bag, but neither of them asked Nieves whether the pills belonged to him.  Nor was Nieves ordered to submit to urine testing or some other form of drug testing.  Instead, Nieves was handcuffed and placed in pre-hearing detention.  Nieves was later served with a chain of custody certification for the bag of pills and a disciplinary report by SCO Sorrell, which charged Nieves with possession of a prohibited substance that was not prescribed by medical personnel.  An investigation report, which was signed by Defendant Sergeant House, stated that there were no other witnesses to the event, nor were there any other facts relating to the disciplinary charge.

The disciplinary charge was then referred to adjudication.  Nieves was assigned a prison paralegal to assist him in preparing for his hearing.  Defendant Nolley served as the disciplinary hearing officer at the hearing, which was conducted on November 8, 2004.  At the hearing, Nieves pleaded not guilty to the charge of possessing contraband.  However, after Nieves requested a polygraph test and a confrontation with SCOs Ferriola and Sorrell, as well as with the corrections officers who conducted the strip search, the hearing was adjourned.

When the disciplinary hearing was reconvened on November 10, 2004, Nieves was able to confront SCO Sorrell.  Hearing Officer Nolley recorded the questions posed by Nieves and the

answers given by SCO Sorrell.  Nieves then confronted SCO Ferriola on November 15, 2004.

Again, Hearing Officer Nolley recorded the questions and answers.  Nolley, however, denied

Nieves's request for a polygraph examination and the corrections officer who conducted the strip

search was never produced.

At the conclusion of the hearing, Hearing Officer Nolley found that, despite Nieves's plea

of not guilty and denial of possession of contraband, the confrontations with SCOs Sorrell and

Ferriola did not prove that the pills belonged to someone else.  Thus, Nolley concluded that

Nieves could not prove that the pills were not in his possession or on his person.  Based on this

conclusion, the disciplinary charge was upheld and Nieves was sanctioned with 10 days of

detention, 120 days of loss of communication time, 90 days in administrative segregation, 365

days of urine monitoring, and permanent loss of contact visits.

Nieves appealed the decision to Defendant Ortiz, the Administrator of the EJSP, on

November 16, 2004.  Since Nieves was scheduled to be released to an assistance program on the

same day, Nieves requested that the decision be expunged or that a new investigation be

conducted.  In the appeal, Nieves argued that the evidence presented at the disciplinary hearing

did not support the charge and that Hearing Officer Nolley incorrectly placed the burden of proof

on Nieves, rather than on the corrections officers, by requiring him to prove that he was not in

possession of the pills.  Nieves also argued that Nolley erred by failing to explain why she

credited the statements of SCOs Sorrell and Ferriola, and not Nieves's statements, and by

denying his request for a polygraph examination.

Defendant Broadus-Smith, the Assistant Superintendent of the EJSP, responded to

Nieves's appeal on behalf of Ortiz.  Upholding Nolley's decision and imposition of sanctions,

Broadus-Smith found that the Department of Corrections' ("DOC") standards on inmate discipline had been complied with.

On December 27, 2004, Nieves appealed Broadus-Smith's decision to the Appellate Division of the Superior Court of New Jersey. The Appellate Division remanded the case to the DOC with the instruction that, because Nieves had not been permitted to cross examine the witnesses against him, the DOC had to render findings of fact and a statement of reasons to support its conclusion, including why Nieves's request for a polygraph test had been denied.

On June 15, 2005, Ortiz communicated with Nieves, stating that SCOs Sorrell and Ferriola had been made available for confrontation and cross examination and that the exchange had not convinced Hearing Officer Nolley that the pills did not belong to Nieves. The communication also stated that it was the Hearing Officer's role to assess the credibility of the testimony and evidence provided and that no new evidence had been presented since the disciplinary hearing. In closing, the communication again denied Nieves's request for a polygraph test because Ortiz failed to see how the test would add anything to the record.

Nieves appealed again to the Appellate Division, which rejected the DOC's argument that substantial credible evidence had been presented in support of Hearing Officer Nolley's determination that Nieves was in possession of the contraband medication. The Appellate Division then found that Nolley improperly placed the burden of proof on Nieves, rather than on the DOC. The Appellate Division also found that there were serious issues of credibility and ordered that a new hearing be conducted under the guidance of a new hearing officer. At the new hearing, Nieves was to be allowed to cross examine the witnesses necessary for an adequate presentation of the evidence, present additional witnesses, and any new evidence, including the

results of a polygraph examination.

A polygraph test was administered to Nieves on June 29, 2006 at the Bayside State Prison.  The senior investigator from the Special Investigations Division determined that Nieves's answers to the polygraph questions were deceptive.  However, according to the examiner's notes, Nieves was denied access to the results of the polygraph examination.

At a subsequent disciplinary hearing, the hearing officer adjudicated Nieves not guilty.  The hearing officer found that the bag of pills was unreliable evidence for disciplinary purposes because, in violation of procedure, no contraband seizure form was attached to the bag of pills.

Following this favorable determination on October 31, 2006, Nieves filed a pro se complaint, asserting violations of his civil rights by Defendants, who he alleged conspired to prosecute him and did maliciously prosecute him, as well as deny him fundamental rights of due process.  On December 4, 2006, Nieves amended his complaint, and then after Nieves was appointed pro bono counsel, he amended his complaint a second time.  In response to Nieves's second amended complaint, Defendants moved to dismiss, or in the alternative, for summary judgement.

In an opinion dated June 18, 2007, Nieves v. Ortiz, 2007 U.S. Dist. LEXIS 44233 (Jun. 18, 2007), this Court converted Defendants' motion into a motion for summary judgment, which was granted in part, denied in part, and partially held in abeyance.  First, the Court considered whether Nieves had failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e.  Because Nieves was still able to exhaust his administrative remedies, the Court held in abeyance its decision on whether Nieves's 42 U.S.C. § 1983 claims were barred by the PLRA.  Next, the Court concluded that summary

6

judgment in favor of Defendants on Nieves's § 1983 claims for malicious prosecution and malicious abuse of process was inappropriate because of the questions surrounding the chain of custody created an issue of fact. The Court also concluded that because facts could emerge in discovery that might enable a jury to find a violation of 42 U.S.C. § 1985 and 42 U.S.C. § 1986, Defendants' motion for summary judgment on these claims should be held in abeyance.

The Court also considered the affirmative defenses that were raised by Defendants. The Court found that the Eleventh Amendment shielded Defendants, who were acting in their official capacities, from liability for monetary damages, but not from Nieves's claims for declaratory and injunctive relief. The Court also found that Defendants, who were also sued in their individual capacities, were not entitled to qualified immunity because there remained unresolved disputes of fact, which prevented a grant of qualified immunity. Finally, the Court rejected the defense that Nieves was guilty of the charged offense because Nieves's guilt had never been established. The Court also refused to dismiss Nieves's claim for punitive damages because, on the evidence presented, a jury could find that Defendants had acted with an evil motive or with callous indifference to a federally protected right.

## II.  DISCUSSION

### A.  Plaintiff's Motion

Nieves has filed a motion seeking a declaration that the substantial evidence standard of § 10A:4-9.15 of the New Jersey Administrative Code is unconstitutional on its face and as applied because it improperly shifts the burden of proof to the defendant in a disciplinary hearing. Defendants, however, contend that substantial evidence has long been the standard for agency determination and that it does not unconstitutionally shift the burden of proof on to the inmate.

Because due process only requires that prison disciplinary decisions be supported by some evidence, Nieves' motion will be denied.

Facial challenges are difficult to mount. "[A] plaintiff can only succeed in a facial challenge by establishing that no set of circumstances exists under which the Act would be valid, i.e., that the law is unconstitutional in all of its applications." Wash. State Grange v. Wash. State Republican Party, ___ U.S. ___ , 128 S. Ct. 1184, 1190 (2008). However, when a statute has a "plainly legitimate sweep," then a facial challenge must fail. Id.

Section 10A:4-9.15 of the New Jersey Administrative Code states that in an inmate disciplinary hearing, a finding of guilt "shall be based on substantial evidence that the inmate has committed a prohibited act." Nieves argues that the substantial evidence standard effectively requires an inmate to prove his innocence, which he contends contravenes an inmate's right to due process as guaranteed by the Fifth and Fourteenth Amendments to the Constitution. According to Nieves's argument, if the weight of the evidence indicates an inmate's innocence, under the substantial evidence standard, a hearing officer is nevertheless required to find against the inmate so long as substantial evidence has been presented in support of the charge. Nieves submits that in a disciplinary action where an inmate's liberty interests are implicated, due process requires that the burden of proof be on the Department of Corrections.

Nieves, however, appears to have confused the right of criminal defendants to be presumed innocent until their guilt is proven beyond a reasonable doubt with the procedural due process rights that are afforded to inmates in prison disciplinary proceedings. "Prison disciplinary proceedings are not part of a criminal prosecution," therefore, inmates charged with disciplinary infractions are not guaranteed the full panoply of rights afforded to a criminal

8

defendant.  <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974).  Indeed, the Supreme Court of the United States has held that "[l]awful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen."  <u>Id.</u> at 555.

Prison inmates are nevertheless afforded limited due process protections in disciplinary proceedings.  "The touchstone of due process is protection of the individual against arbitrary action of the government."  <u>Wolff</u>, 418 U.S. at 558.  Thus, prison inmates are entitled to advanced written notice of the disciplinary charge; to call and confront witnesses when doing so is not unduly hazardous to institutional safety or correctional goals; present documentary evidence; and in the case of a finding of guilt, to receive a written statement as to the evidence relied on and the reasons for the disciplinary action.  <u>See</u> <u>Wolff</u>, 418 U.S. at 563-66.[1]

Due process also requires that the decision of a disciplinary hearing officer be supported by "some evidence."  <u>Superintendent v. Hill</u>, 472 U.S. 445, 455 (1985).  In <u>Hill</u>, the Supreme Court addressed the issue of whether the decision of a prison disciplinary board, which results in the loss of a liberty interest, "must be supported by a certain amount of evidence in order to satisfy due process."  472 U.S. at 453.  Picking up where <u>Wolff</u> had left off, the Court found that requiring a "modicum of evidence" in support of a decision depriving an inmate of a protected liberty interest would "help to prevent arbitrary deprivations without threatening institutional

---

[1] New Jersey, which affords greater protections to inmates than those required under federal law, nevertheless balances the due process rights of inmates against the needs and objectives of its correctional institutions.  <u>McDonald v. Pinchak</u>, 139 N.J. 188, 194 (1995).  In addition to the due process protections outlined in <u>Wolff</u>, New Jersey requires that the Department of Corrections "structure an informal hearing to assure that the disciplinary finding will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the inmate's behavior."  <u>McDonald</u>, 139 N.J. at 195.  New Jersey also requires that when a hearing officer declines a request to call a witness or permit cross-examination, the hearing officer must record the reasons for the refusal.  <u>Id.</u> at 196, 198.

interests or imposing undue administrative burdens." <u>Id.</u> at 455.  The Court declined to adopt a more stringent standard as a constitutional requirement, and instead held that "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board." <u>Id.</u>

Because the Supreme Court has held that the Constitution only requires deprivations of liberty interests in a prison disciplinary proceeding to be supported by some evidence, a New Jersey law requiring that a finding of guilt at a disciplinary hearing be based on substantial evidence—a higher evidentiary standard—cannot be unconstitutional.  And even though the substantial evidence standard is a low evidentiary standard, the burden is still on the prison administrators to present sufficient evidence of the accused inmate's guilt.  There is no obligation on the part of the inmate to prove his innocence or disprove his guilt.  Indeed, the language of § 10A:4-9.15(a) in no way suggests that the burden of proof has been shifted to the inmate.  Therefore, Nieves's motion challenging the constitutionality of § 10A:4-9.15 will be denied.

## B.  Defendants' Motion

Defendants have filed a motion seeking summary judgment on Nieves's § 1983 claim for retaliatory malicious prosecution in violation of his First Amendment rights; his § 1983 claim for malicious abuse of process; his § 1985 and § 1986 claims for conspiracy to interfere with his civil rights; and his state law claim under the New Jersey Civil Rights Act.  Defendants also assert that Nieves's claims should be dismissed because he failed to exhaust administrative remedies as required by the Prison Litigation Reform Act of 1996.  Because Nieves should not be held responsible for the EJSP staff's failure to recognize his remedy request forms as administrative grievances, the Court finds that Nieves has exhausted his administrative remedies.

The Court also finds that questions of fact exist which prevent a grant of summary judgment as to

Defendants Sorrell, Ferriola and Popowych on Nieves's retaliatory malicious prosecution and

state law claims, but that summary judgment on these claims should be granted as to Defendants

Ortiz, Broadus-Smith, Nolley, House and Smith.  Finally, summary judgment in favor of all

defendants will be granted on Nieves's malicious abuse of process and § 1985 and § 1986

claims.

### (1) Standard of Review under Rule 56(c)

Summary judgment is proper where "there is no genuine issue as to any material fact and

. . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  For an

issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury

could find for the non-moving party."  Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir.

2006).  For a fact to be material, it must have the ability to "affect the outcome of the suit under

governing law."  Id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of

summary judgment.

On a summary judgment motion, the moving party has the burden of showing that no

genuine issue of material fact exists.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When

the moving party does not bear the burden of proof at trial, the moving party may discharge its

burden by showing that there is an absence of evidence to support the non-moving party's case.

Id. at 325.  If the moving party can make such a showing, then the burden shifts to the

non-moving party to present evidence that a genuine fact issue exists and a trial is necessary.  Id.

at 324.  In meeting its burden, the non-moving party must offer specific facts that establish a

genuine issue of material fact, not just simply create "some metaphysical doubt as to the material

facts." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).

In deciding whether an issue of material fact exists, the Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. <u>See</u> <u>Pennsylvania Coal Ass'n v. Babbitt</u>, 63 F.3d 231, 236 (3d Cir. 1995). The Court's function, however, is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. <u>Anderson</u>, 477 U.S. at 249. If there are no issues that require a trial, then judgment as a matter of law is appropriate.

*(2) Failure to Exhaust Administrative Remedies*

Defendants argue that they are entitled to summary judgment because Nieves has failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1996 ("PLRA"). The PLRA requires that inmates seeking to assert 42 U.S.C. § 1983 claims against prison officials exhaust all available administrative remedies before taking legal action.[2] <u>Woodford v. Ngo</u>, 548 U.S. 81, 88 (2006). In order to properly exhaust all available administrative remedies, an inmate must "us[e] all steps that the agency holds out, and do[] so properly." <u>Id.</u> at 90. This means that the inmate must comply with the prison's deadlines and other critical procedural rules. <u>Id.</u> If, however, an inmate fails to meet deadlines or follow the appropriate rules, then the inmate's federal court action can be dismissed for failure to properly exhaust administrative remedies. <u>See id.</u> at 93.

In the June 18, 2007, Opinion, the Court held in abeyance Defendants' failure to exhaust

---

[2] Section 1997e(a) of Title 42 states: "No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

defense in order allow Nieves to file an internal grievance and exhaust the prison grievance process.[3]  2007 U.S. Dist. LEXIS 44233, at *18.  On June 25, 2007, following the Court's opinion, Nieves submitted a "Request System & Remedy Form" to EJSP officials.  Attached to the form was a copy of Nieves Second Amended Complaint.  The form referred to the attached complaint as providing the factual basis for Nieves's grievances.  Shortly after Nieves filed the remedy request form, it was rejected.  The reason given for the rejection was that Nieves was not allowed to use the Inmate Remedy/Request Form in relation to disciplinary charge appeals.  Nieves alleges that when his remedy form was returned to him, the bottom section of the form had been ripped off.  The section of the form that was removed includes the "Staff Response Area," where the prison staff is supposed to provide a written response to inmate's grievance; the "Inmate's Remedy Appeal Information" where the inmate can list any grounds for appeal; and a space for providing the grounds for the decision on appeal.

On July 9, 2007, Nieves submitted a second "Request System & Remedy Form."  This form reiterated the issue raised in Nieves's first remedy request form and again attached a copy of the Second Amended Complaint in order to provide the factual basis for his grievances.  This second remedy request form specifically asked that receipt of the form be acknowledged in accordance with the prison's procedures.  Rather than acknowledge the receipt of the form, Nieves received a reply which stated that the request was denied and that litigation items must be served by the U.S. Marshals and not via an inmate remedy request form.  Again, the bottom

---

[3] Even though Nieves appealed the outcome of his disciplinary hearing to the New Jersey Appellate Division, the PLRA requires an inmate to exhaust all administrative remedies prior to filing a federal action, regardless of whether the administrative avenues will provide the relief that the inmate is seeking.  See Nieves, 2007 U.S. Dist. LEXIS 44233, at *16 (quoting Nyhuis v. Reno, 204 F.3d 65, 71 (3d Cir. 2000)).

section of the remedy request form, which contained the spaces for responses and instructions on appeal, had been torn away.  Because the relevant sections of the remedy request forms had been removed, Nieves was unable to appeal the denials of his requests.

Defendants argue that despite these two attempts to comply with the procedures for filing internal grievances, Nieves has failed to exhaust his administrative remedies.  Defendants take no responsibility, however, for the apparent confusion of the prison staff who misinterpreted Nieves's first remedy request form as an attempt to appeal his disciplinary decision and his second remedy request for as an attempt to serve his Amended Complaint on EJSP officials.  Given that it was members of the prison staff who failed to recognize Nieves's remedy request forms as administrative grievances, it would not be fair to hold their mistakes against Nieves and bar his claims on the grounds of failure to exhaust.  Therefore, the Court finds that Nieves has exhausted his administrative remedies as required by the PLRA.

*(3) Malicious Prosecution*

Malicious prosecution claims may be grounded in conduct that "violates the Fourth Amendment, the procedural due process clause or other explicit text of the Constitution."  Torres v. McLaughlin, 163 F.3d 169, 173 (3d Cir. 1998).  As such, malicious prosecution is cognizable as a 42 U.S.C. § 1983 claim when the plaintiff can establish that a state actor initiated a prosecution in retaliation for the plaintiff exercising his First Amendment rights.  See Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 795 (3d Cir. 2000).

To prevail on a First Amendment retaliatory prosecution claim, the plaintiff must plead and prove the elements of common law malicious prosecution as well as a violation of his First Amendment rights.  See Hartman v. Moore, 547 U.S. 250, 258 (2006); Merkle, 211 F.3d at 792,

14

794.   Common law malicious prosecution requires that the plaintiff prove that: (1) the defendant initiated a proceeding against him; (2) the proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of the proceeding.  Camiolo v. State Farm Fire & Cas. Co., 334 F.3d 345, 362-63 (3d Cir. 2003).  First Amendment retaliation requires that the plaintiff prove that: (1) the conduct which led to the alleged retaliation was constitutionally protected; (2) the inmate suffered some adverse action at the hands of the prison officials; and (3) there is a causal link between the exercise of the inmate's constitutional rights and the adverse action taken against him.  Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).

Here, the second and fifth elements of Nieves's malicious prosecution claim are not disputed.  The disciplinary proceeding ended in Nieves's favor when the hearing officer at the Bayside State Prison dismissed the charges because contraband seizure forms were not attached to the bag of pills, thereby making the evidence against Nieves unreliable for disciplinary adjudication purposes.  See Smith v. Holtz, 87 F.3d 108, 113 ("Actual innocence is not required for a common law favorable termination . . . .").  In addition, Nieves suffered a deprivation of a liberty interest as a result of the disciplinary proceeding because his parole date, which had previously been set for November 16, 2004, was cancelled and he was sanctioned with detention and administrative segregation.

Nor is the first element of Nieves's malicious prosecution claim disputed.  Although most malicious prosecution cases from the Third Circuit require that the defendant initiate a criminal proceeding against the plaintiff, see, e.g., Camiolo, 334 F.3d at 362-63, in this case, the initiation

15

of the prison disciplinary proceedings is sufficient to satisfy the first element.  The similarities between prison disciplinary proceedings and criminal proceedings, from the standpoint of deprivation of an inmate's liberty interests, suggest that it is not necessary that the defendant initiate a criminal proceeding against the plaintiff in order for the plaintiff to prove malicious prosecution.

The initiation requirement does, however, limit the defendants against whom Nieves can assert a claim for malicious prosecution.  In his Second Amended Complaint, Nieves does not specify which of the defendants are responsible for the alleged malicious prosecution.  However, not all of the named defendants were involved in initiating the disciplinary proceedings against Nieves.  Defendant Nolley, the disciplinary hearing officer, took no part in the initiation of the proceedings; nor did the prison administrators, Ortiz and Broadus-Smith.  Similarly, Defendants House and Smith merely investigated the charge once it had been filed.  Therefore, the Court will dismiss Nieves's malicious prosecution claim as to Defendants Ortiz, Broadus-Smith, Nolley, House, and Smith.   Nieves's malicious prosecution claim will continue against Defendant Sorrell, who filed the disciplinary report accusing Nieves of possessing the pills, Defendant Ferriola, the corrections officer who allegedly searched Nieves, and Defendant Popowych, who was also consulted when the pills were found.

The only elements that are disputed in Nieves's malicious prosecution claim are the third and the fourth: whether the proceeding was initiated without probable cause and whether the defendants acted maliciously in initiating the proceeding.  Defendants make no specific argument as to the existence or lack of probable cause; presumably, however, Defendants would argue that the disciplinary charge was supported by probable cause because Defendant Sorrell saw the pills

fall to the ground by Nieves's feet.  Defendants do, however, argue that there is no evidence that any of the remaining defendants acted maliciously towards Nieves.  Defendants maintain that there is no evidence that Defendants Sorrell, Ferriola or Popowych knew of Nieves's involvement in a prior legal action against the prison, nor is there any evidence that they were reacting to Nieves assisting other inmates in taking legal or administrative action against prison staff.

The burden is on Nieves to prove a lack of probable cause, Hartman, 547 U.S. at 265-66, as well malicious intent, Camiolo, 334 F.3d at 362-63.  In addition to his own testimony that the pills did not belong to him and were never on his person, Nieves has submitted evidence showing that he was strip searched just before the pills were found and no contraband was found in his clothes or on his person; that he has no heart condition that would require him to take medication; and that corrections officers have access to the office in the visitation hall where inmates' medication is kept in small plastic bags, like the one that the pills were found in. Nieves has also submitted evidence showing that there is no record of who conducted the initial strip search; that none of the other inmates who were returning from the visitation hall with Nieves were questioned about the pills; and that the pills were eventually destroyed.

This evidence creates an issue of fact as to whether there was probable cause to charge Nieves with possession of contraband.  Based on this evidence, a reasonable jury could conclude that Nieves never possessed the pills and therefore that Defendants Sorrell, Ferriola and Popowych lacked probable cause to charge Nieves with possession of contraband and initiate a disciplinary proceeding against him.  From the lack of probable cause, a jury could infer that these Defendants acted maliciously or at least for a purpose other than bringing Nieves to justice.

17

Nieves's evidence is also sufficient to establish a prima facie case of a violation of his First Amendment rights.  Nieves has submitted deposition testimony that he has participated in previous legal action against the prison and that he frequently assisted other inmates in filing grievances against prison staff.  Nieves's participation in legal action and assisting other inmates with the administrative grievance process is conduct that is protected by the First Amendment. In addition, the disciplinary action, as well as the revocation of parole and administrative segregation, constitute adverse action at the hands of prison officials.

Although Defendants deny having any knowledge of either Neives's participation in previous litigation or his assistance of other inmates, Nieves should be given the opportunity to prove that his participation in previous litigation or his assistance of other inmates was general knowledge within the EJSP.  If a jury concludes that Nieves's activities were generally known by the EJSP staff and that probable cause for the disciplinary action was lacking, then it is conceivable that the jury could also find a causal connection between Nieves's protected activity and the filing of the false disciplinary charge against him.

In light of these questions of fact, granting summary judgment in favor of Defendants Sorrell, Ferriola and Popowych on Nieves's retaliatory malicious prosecution claim is inappropriate.

### (4) Malicious Abuse of Process

A claim for malicious abuse of process is distinct from a claim for malicious prosecution. In contrast to malicious prosecution claims, the gravamen of an abuse of process claim is the "perversion of lawfully initiated process to illegitimate ends."  Ference v. Twp. of Hamilton, 538 F. Supp. 2d 785, 797-98 (D.N.J. 2008) (quoting Heck v. Humphrey, 512 U.S. 477, 486 n.5

18

(1994)).  "An abuse of process is by definition a denial of procedural due process" and is therefore actionable under 42 U.S.C. § 1983.  Jennings v. Shurman, 567 F.2d 1213, 1220 (3d Cir. 1977).  Thus, to prevail on an abuse of process claim, a plaintiff must only show that after the legitimate initiation of some proceeding, the proceeding is "used for a purpose other than that intended by the law."  Ference, 538 F. Supp. 2d at 798.  "[T]here must be some proof of a definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process."  Id.  Neither favorable termination, nor lack of probable cause, is required in an abuse of process claim.  Nieves, 2007 U.S. Dist. LEXIS 44233, at *21.

Defendants argue that Nieves's abuse of process claim should be dismissed because, according to Nieves, the proceedings were not legitimately filed.  Therefore, Defendants conclude that Nieves cannot prevail on the claim.  This argument is unavailing.  A claim for abuse of process is cognizable even when process was wrongfully initiated.  See Jennings, 567 F.2d at 1218.  An abuse of process claim does not turn on whether the process was legitimately or illegitimately initiated, but rather on whether after the initiation, it was used for some improper purpose.

Nieves argues that questions of fact exist on his abuse of process claim, but he has provided no evidence to support his allegations that the defendants who were involved in the prosecution of his disciplinary charge, namely Defendants Nolley, House, and Smith, abused or misused their positions for some unlawful or ulterior purpose.  Having nothing other than Nieves's unsupported allegations to go on, Nieves has created no issues of fact that would prevent summary judgment from being granted in favor of Defendants on the abuse of process claim.

*(5) Conspiracy to Interfere with Civil Rights*

Section 1985 of Title 42 of the United States Code prohibits any two or more persons from conspiring to interfere with another person's right to hold or accept office, 42 U.S.C. § 1985(1), to participate in civil or criminal action as a party, witness, or juror, 42 U.S.C. § 1985(2), and to equal protection under the laws, 42 U.S.C. § 1985(3). The parties dispute the existence of a conspiracy: Defendants argue that Nieves has presented no evidence that could lead a jury to conclude that EJSP employees conspired against him while Plaintiff asserts that on the basis of Defendants' collective actions, a jury could infer the existence of a conspiracy. However, there is more to a § 1985 claim than merely finding the existence of a conspiracy—the conspiracy must be entered into for a particular purpose.

Under subsection (2), a conspiracy to intimidate a party, witness, or juror must be motivated by the "intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws." Similarly, subsection (3) requires that the conspiracy be "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . ." The Court of Appeals for the Third Circuit has held that "§ 1985(3) was not intended to provide a federal remedy for all tortious, conspiratorial interferences with the rights of others, or to be a general federal tort law." Farber v. City of Paterson, 440 F.3d 131, 135 (3d Cir. 2006). Rather, § 1985(3) "requires the intent to deprive of equal protection, or equal privileges and immunities." Id. Therefore, "a claimant must allege some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action in order to state a

20

claim [under § 1985(3)]." Id.  This requires that the claimant not only allege that "the conspiracy

was motivated by discriminatory animus against an identifiable class," but also that "the

discrimination against the identifiable class was invidious." Id.

No such allegations have been made in this case.  Nieves has only alleged that Defendants

conspired against him in filing the allegedly false contraband charges; he has made no

allegations, and presented no evidence, that Defendants' actions were motivated by a

discriminatory animus or that any supposed discrimination was invidious, nor has he identified

any class of persons who would be the subject of Defendants' discrimination.  Therefore, Nieves

cannot sustain a claim under § 1985.

Because Nieves cannot sustain a claim under § 1985, his 42 U.S.C. § 1986 claim

necessarily fails.  "[Section] 1986 constitutes an additional safeguard for those rights protected

under 42 U.S.C. § 1985, and transgressions of § 1986 by definition depend on a preexisting

violation of § 1985." Clark v. Clabaugh, 20 F.3d 1290, 1295 (3d Cir. 1994).  Since Nieves

cannot establish a violation of § 1985, his § 1986 action must be dismissed.  See id. at 1295 n.5.

*(6) New Jersey Civil Rights Act*

The New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. § 10:6-1 et seq., which was

modeled after § 1983, creates a state law cause of action for violations of an individual's federal

and state constitutional rights.  Owens v. Feigin, 194 N.J. 607, 611 (2008).  Section 10:6-2(c)

provides a remedy against private and public defendants for a person who demonstrates that he

> has been deprived of any substantive due process or equal protection
> rights, privileges or immunities secured by the Constitution or laws
> of the United States, or any substantive rights, privileges or
> immunities secured by the Constitution or laws of this State, or whose
> exercise or enjoyment of those substantive rights, privileges or

21

immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law.

Defendants argue that, to be liable under the NJCRA, a defendant must deprive the plaintiff of his rights by "threats, intimidation, or coercion."  However, the language of the statute itself shows that this is not the case.  The disjunctive construction of the statute means that threats, intimidation, or coercion is only one of the ways in which a plaintiff can establish a violation of his state or federal rights—it is sufficient, but not necessary to maintaining a claim under the NJCRA.

In this case, the Court has already concluded that Nieves's § 1983 claim for retaliatory malicious prosecution in violation of the First Amendment can proceed against Defendants Sorrell, Ferriola and Popowych.  Thus, to the extent that Nieves's rights under the New Jersey Constitution parallel his federal rights, Nieves's has presented sufficient evidence on which a jury could find in his favor under the NJCRA.

### III. CONCLUSION

For the reasons set forth above, Nieves's motion seeking a declaration that New Jersey Administrative Code § 10A:4-9.15 is unconstitutional is denied and Defendants' motion for summary judgment is granted in part and denied in part.  Defendants' motion will be granted on Nieves's First Amendment retaliatory malicious prosecution claim and NJCRA claim as to Defendants Ortiz, Broadus-Smith, Nolley, House, and Smith, and denied as to Defendants Sorrell, Ferriola and Popowych.  Defendants motion will be granted on Nieves's malicious abuse of process claim as well as on his § 1985 and § 1986 claims.

The Court will enter an order implementing this opinion.


/s/ Dickinson R. Debevoise
DICKINSON R. DEBEVOISE, U.S.S.D.J.


Dated: August 20, 2008